# EXHIBIT E

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SHUSHMA JONES,

                Plaintiff,

v.

THE DOW CHEMICAL COMPANY,

                Defendants.

_____/

Case No. 1:23-cv-11814

Honorable Thomas L. Ludington
United States District Judge

### OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR RECUSAL

On July 26, 2023, Plaintiff Sushma Jones filed this case, alleging that Defendant Dow, Inc's ("Dow") employees discriminated against her because of her race and gender. This is just one of several similar cases alleging gender and racial discrimination by Dow employees. Attorney Carla Aikens represents Plaintiff; yet nearly all court appearances for Plaintiff have been handled by her colleague, Rejanae Thurman.

Today, I must decide whether I should continue serving as the U.S. District Judge presiding over this case. Each of the cases filed by Plaintiff's Counsel has been stayed pending a decision on a later-filed Petition for Writ of Mandamus filed by Plaintiff that is pending before the Sixth Circuit. On December 17, 2025, the Sixth Circuit reserved its decision on the Mandamus Petition and directed this Court to respond to Plaintiff's recusal Motion before January 6, 2025.

Plaintiff offers several reasons for my recusal, but none, in my judgment, are persuasive. As a result, Plaintiff's Motion will be denied.

I.

A. An Introduction to the Facts in This Case

The facts of Plaintiff's case are relatively straightforward. Plaintiff is a black logistics technician hired by Dow in January 2022. ECF No. 1 at PageID.2. She alleges she worked primarily with white male coworkers in a manufacturing facility in Midland, Michigan. *Id.*

Plaintiff alleges that she started experiencing harassment on March 5, 2022, when her supervising operator, Don Wilson, accused her of cutting a hose on a machine and then directed her to clean up the spilled product. *Id.* The next day, Wilson asked to train her again. *Id.* Plaintiff did not agree. *Id.* Plaintiff contends that Wilson began turning the other operators against her at this point. *Id.*

Dow disagrees with these factual allegations. Dow explains that Plaintiff was constantly on her phone, that she did not arrive on time, and often left work that was her responsibility for other employees to complete. ECF No. 125 at PageID.2386.

Plaintiff responds that her fellow operators were unwilling to assist her with her daily tasks, making her job difficult and stressful. ECF No. 1 at PageID.2. Plaintiff also contends that she was told by someone that the other operators and Wilson wanted to have her demoted and, ultimately, her employment terminated. *Id.*

On March 14, 2022, Plaintiff explains that she met with her work trainer, "Scott," and told him that she was being harassed, bullied, and overworked, but she realized that Scott agreed with Wilson's criticism, so she ended the conversation. ECF No. 1 at PageID.2–3. That same day, Plaintiff met with two other individuals (their role within Dow is not explained in the Complaint),

- 2 -

Moe McGee and Jason Ellison[1], and her shift was changed. *Id.* at PageID.3. Plaintiff explains that Ellis apologized to her and promised that he would be more aware of what was "happening with her." *Id.* Plaintiff contends that McGee called a staff meeting, but none of the "wrongdoers" attended the meeting. *Id.* And when McGee questioned Wilson about his absence, Wilson allegedly replied, "f*** that s***." *Id.* Afterward, Plaintiff alleges that several of her white male coworkers continued to harass her. *Id.*

Dow disagrees with Plaintiff's factual allegations. Dow argues that, while Plaintiff did complain to McGee about her experience at work, her concerns were minor "nitpicking" issues regarding her work responsibilities. ECF No. 125 at PageID.2388. Dow explains that there was an organized meeting between Plaintiff, Ellis, McGee, and Matt Maiers, the operator's supervisor, who worked with Plaintiff. *Id.* Plaintiff expressed, during the meetings, that she was being bullied and that her coworkers were trying to get her fired. *Id.* Maiers reminded her coworkers during her shift that they should be welcoming to all team members. *Id.*

In March of 2022, Plaintiff saw her doctor, who noted that she had major depressive disorder and anxiety and told her that she should find a different job. ECF No. 1 at PageID.3. In May of 2022, Plaintiff filed several complaints with Dow's human resources employees who, according to her, simply closed the investigation without effort. *Id.* Plaintiff contends that a coworker told her to refile the complaints as ethics reports, which she did on May 20, 2022. *Id.*

Dow responds that the Office of Ethics and Compliance ("OEC") did open an investigation. ECF No. 125 at PageID.2391. Dow contends that the OEC investigation was "robust," with many employees being interviewed to investigate Plaintiff's allegations. *Id.* at PageID.2392.

---

[1] Dow's Motion for Summary Judgment indicates that McGee is a union steward, ECF No. 125 at PageID.2385, and "Ellison"—whose last name is actually Ellis—is the Site Logistics Operations Leader. *Id.* at PageID.2387.

Then, on May 23, 2022, Plaintiff seemingly went back to her doctor's office for work-related stress because of her harassment and her fear that she might be fired. ECF No. 1 at PageID.3. Her doctor reportedly told her to take off work and placed her on medication. *Id.*

Plaintiff contends that, sometime thereafter, she was transferred to a different, less desirable shift by the same supervisor she had confided in.[2] *Id.* She also alleges that she was refused overtime pay because of her ethics reports. *Id.* at PageID.4.

On June 23, 2022, Plaintiff alleges that operator Ronald Chamberlin told her that he watched the movie Harriet Tubman, and that she looked like her. *Id.* Plaintiff said that the comment bothered her because Chamberlain had told her to "stop working like a slave" a few months earlier. *Id.* Plaintiff contends that sometime thereafter she was again moved to a less desirable job, this time in a different building. *Id.*

Plaintiff alleges that Dow completed its investigation and determined that she has a "personality clash"[3] with other employees. *Id.* Dow did not find evidence supporting Plaintiff's accusations of racial bias by her coworkers. *Id.*

Dow counters that Chamberlain was referring to the actress who played Harriet Tubman in the movie, not Tubman herself. ECF No. 125 at PageID.2394. Dow explains that the OEC investigation concluded that there was no discriminatory animus, but that Plaintiff's fellow employees "should receive coaching and reminder training on Dow's Respect and Responsibility policy." *Id.* at PageID.2395.

---

[2] It is unclear from the Complaint, ECF No. 1, which supervisor Plaintiff alleges transferred her to the different shift. But from Dow's Motion for Summary Judgment, that person appears to have been either Maiers or Ellis. ECF No. 125 at PageID.2389.

[3] It is not clear from the Complaint, ECF No. 1, who the specific employees Plaintiff had a "personality clash" with.

Dow explains that Plaintiff was moved to a different building because she requested the transfer. *Id.* at PageID.2395–96. But Plaintiff worked only two days in this position before leaving and never returning, allegedly because she had issues with her most recently assigned trainer in the new building. *Id.* at PageID.2396.

On July 28, 2022, Plaintiff filed a charge of racial discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC), and on April 27, 2023, received a right-to-sue letter. ECF No. 1. at PageID.4. Plaintiff then sued on July 26, 2023, more than two years ago. ECF No. 1.

### B. Procedural History of the Case

The procedural history of the case is important for understanding the context of Plaintiff's Motion for Recusal. ECF No. 143. On November 27, 2023, the Court issued a scheduling order designating April 30, 2024, as the discovery cutoff. ECF No. 9. On March 12, 2024, Plaintiff filed a motion to compel the deposition of a corporate designee on several topics. ECF No. 12. On March 20, 2024, the Motion was referred to Magistrate Judge Morris. ECF No. 13. The Motion was argued before Judge Morris on April 17, 2024, who granted the Motion in part and denied it in part. ECF No. 20.

Then, on June 7, 2024, the Dow filed a motion to compel production of documents. ECF No. 23. On June 10, 2024, I referred the Motion to Judge Morris, ECF No. 24, and a hearing was scheduled for July 15, 2024. ECF No. 25. But before that Motion could be argued, on July 9, 2024, Plaintiff filed a motion to compel corporate depositions and sought sanctions for obstructed depositions. ECF No. 29. That Motion, too, was referred to Judge Morris and was heard on July 15, 2024. ECF Nos. 30; 31. And was granted in part and denied in part. ECF No. 32. Then, on August 1, 2024, Dow moved for sanctions against Plaintiff's Counsel. ECF No. 34. On August 6,

2024, this Motion was referred to Judge Morris. ECF No. 36. A hearing was set for August 22, 2024. ECF No. 36.

But then, on August 9, 2024, yet another Motion to Compel was filed by Plaintiff, this time seeking to compel "full and complete discovery responses." ECF No. 38. The hearing was set for September 16, 2024. ECF No. 40.

On August 22, 2024, both Plaintiff's Motion to Compel Corporate Depositions and for Sanction and Dows Motion for Sanctions were argued in front of Judge Morris. Judge Morris denied Plaintiff's Motion but granted Dow's Motion for Sanctions. ECF No. 43. Plaintiff then objected to Dow's Bill of Costs and Judge Morris's ruling for sanctions. ECF No. 49.

From there, between August 22, 2024, to the time Plaintiff's Motion for Recusal was filed on May 8, 2025, the Parties filed several additional motions—almost all related to discovery— Plaintiff was sanctioned again, ECF No. 71, Plaintiff's counsel objected again to the second set of sanctions, ECF No. 76, and the docket explodes with addition entrees: from 43 to 143. Dows' Motion for Summary Judgment was filed on March 4, 2025, and is still pending. ECF No. 125. Indeed, it is one of 12 unresolved motions pending because the case is stayed. ECF No. 176. The majority of the motions are motions *in limine* to exclude evidence or arguments at trial, ECF Nos. 158, 159, 160, 161, motions to show cause, ECF Nos. 75, 155, motions for reconsideration, ECF Nos. 86, 146, or motions to set aside, ECF No. 156. At this juncture, there are an extraordinarily unusual 179 entrees on the docket.

### C. The Other Dow Cases

Plaintiff's case is not the only case on my docket involving Dow and discrimination allegations initiated by Attorney Carla Aikens. Indeed, it is one of nine cases that have been stayed pending resolution of Plaintiff Jones' Petition for Writ of Mandamus. *See Walker v. Dow*, Case No, 24-12219; *Williams v. Dow*, Case No. 24-12220, *Baston v. Dow*, Case No. 24-12411, *Jackson v.*

*Dow*, Case No. 24-12459, *Bledson v. Dow*, Case No. 24-12912, *Biggins v. Dow*, Case No. 24-12969, *Santos v. Dow*, Case No. 24-13012, *Yu v. Dow*, Case No. 25-11478. Between these eight additional cases, there are twenty-four pending motions, none of which may be addressed before the request for Mandamus is decided.

### D. The Eastern District of Michigan—Northern Division

It is important to understand the organization of the Eastern District of Michigan (EDMI). Unlike many federal districts, the EDMI was divided into two divisions, the Northern and Southern Divisions, by an act of Congress in 1948. *See* 28 U.S. Code § 102 (a)(2). The Northern Division, of which I am the only presiding United States District Judge, comprises the counties of Alcona, Alpena, Arenac, Bay, Cheboygan, Clare, Crawford, Gladwin, Gratiot, Huron, Iosco, Isabella, Midland, Montmorency, Ogemaw, Oscoda, Otsego, Presque Isle, Roscommon, Saginaw, and Tuscola. *Id.* Plaintiff's case was assigned to the Northern Division because she resides in Saginaw County, and Dow's business and manufacturing facilities are located in Midland County.[4]

### E. The Request for Mandamus

On May 29, 2025, Plaintiff filed her Petition for a Writ of Mandamus to the Sixth Circuit, requesting that I be disqualified from presiding over this case—and by extension presumably— over the remaining Dow cases. *See In re Sushma Jones*, Case No. 25-1486 (6th Cir. May 29, 2025). On October 8, 2025, Plaintiff's counsel filed a supplemental brief in support of her Petition. *See id.* I followed up with correspondence inquiring whether the Sixth Circuit wanted a response to the Petition for the Writ of Mandamus. *See id.* On December 17, 2025, the Sixth Circuit entered

---

[4] Plaintiff argues that "all cases against Dow are only assigned to [both Magistrate Judge Morris and I], nearly without exception." ECF No. 143 at PageId.4410. But that is simply a product of the statutory design of the EDMI.

an order reserving attention to the Mandamus Petition and directing a decision on Plaintiff's Motion to Recuse by or before January 6, 2026. *See id.*

After careful consideration of Plaintiff's Motion to Recuse and the Petition for a Writ of Mandamus, I see no reason for recusal.

## II.

Federal judges must disqualify themselves from presiding in "any proceeding" in which their impartiality "might reasonably be questioned." 28 U.S.C. § 455(a). This subsection seeks to "avoid even the appearance of partiality." *Liljeberg v. Health Servs. Acquisition* Corp., 486 U.S. 847, 860 (1988). So, "[i]f it would appear to a reasonable person that a judge has knowledge of facts that would give him [or her] an interest in the litigation[,] then an appearance of partiality is created even [if] no actual partiality exists." *Id.*

Separately, judges must also recuse when they have, individually or as a fiduciary, a "financial interest in the subject matter in controversy or in a party to the proceeding." 28 U.S.C. § 455(b)(4). Under this provision, a "fiduciary" includes executors, administrators, trustees, and guardians. *Id.* § 455(d)(3). A financial interest means "ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party." *Id.* § 455(d)(4). But there are exceptions for, among other things, "[a]n office in an educational, religious, charitable, fraternal, or civic organization." *Id.* § 455(d)(4)(ii).

Further, a judge must recuse themselves if they or their spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person is (1) a party to the proceeding, or an officer, director, or trustee of a party, (2) acting as a lawyer in the proceeding, (3) known by the judge to have an interest that could be substantially affected by the outcome of the proceeding, (4) likely to be a material witness in the proceeding. *Id.* § 455(b)(5).

Nonetheless, a motion for recusal should not be granted lightly. After all, "a federal judge has a duty to sit where not disqualified, which is equally as strong as the duty to not sit where disqualified." *Laird v. Tatum*, 409 U.S. 824, 837 (1972) (emphasis omitted).

### III.

### A.

Plaintiff first contends that "[a]s the son of the former Chairman and Chief Executive Officer of Defendant," my recusal from the case is required under 28 U.S.C. § 455(b)(5). ECF No. 143 at PageID.4404–05. Specifically, Plaintiff cites § 455(b)(5)(i), which provides that a judge must recuse when they, their spouse, or a person within a third degree of relationship to either of them is "a party to the proceeding, or an officer, director, or a trustee of a party."

My father, however, passed away in December of 2010. He is not the current CEO of Dow Chemical—nor was he ever the CEO of Dow Chemical. *See* Michael Wayland, *Ludington, a Former Dow Corning Chairman and CEO, Dies at 82 Years Old in Midland*, MLIVE, (Dec. 07, 2010) https://tinyurl.com/4zmpjb8b [https://perma.cc/UNN9-9Z27]. My father held many positions in his lifetime, including as CEO of Dow Corning, but not of Dow Chemical. *See John Samuel Ludington*, MIDLANDDAILYNEWS, (Dec. 7, 2010) https://tinyurl.com/4sdtfjk5. Further, his tenure as CEO of Dow Corning lasted only from 1984 to 1992, when he retired. *See* Michael Wayland*, Ludington, a Former Dow Corning Chairman and CEO, Dies at 82 Years Old in Midland*. And Dow Corning did not merge with Dow Chemical until June of 2016. *See* Heather Jordan, *Dow Chemical Assumes Full Control of Dow Corning*, MLIVE, (Jun. 1, 2016) https://tinyurl.com/4uhumdru [https://perma.cc/FN3V-3NPV]. In short, because my father is not a current "officer, director, or a trustee to [Dow]," and because he was never an officer of Dow, my recusal is not governed by § 455(b)(5)(i).

- 9 -

Independently, courts have also found that any bias a judge might have diminishes over time. *See In re Kansas Pub. Emps. Ret. Sys.*, 85 F.3d 1353, 1363, n.8 (8th Cir. 1996) (noting that a judge's prior position as a partner of a law firm involved in the lawsuit did not raise a question of bias because "the intervening 15 years [were] sufficient to erase any appearance of partiality stemming from [the judge's] prior firm membership."); *see also United States v. Lovaglia*, 954 F.2d 811, 817 (2d Cir. 1992) (holding that the district judge did not abuse his discretion before sentencing defendants even though he had a prior relationship with the alleged victims because, in part, his relationship with the victim had ended seven or eight years prior); *In re Allied Signal Inc.*, 891 F.2d 974, 976 (1st Cir. 1989) ("We do not see how a series of social or business relationships of the sort of which petitioners complain, between a judge and lawyer, taking place *more than eight years ago*, before the judge's appointment, could cast significant doubt on the judge's impartiality.") (emphasis added). My father retired from Dow Corning in 1992, thirty-three years ago. *See* Michael Wayland*, Ludington, a Former Dow Corning Chairman and CEO, Dies at 82 Years Old in Midland*. In the past twenty years, I have been assigned well over twenty cases involving Dow as both a Plaintiff and a Defendant without objection. Indeed, the Dow that existed when my father was employed at Dow Corning is very different from the Dow that exists today. I have no concern to either assist or hinder Dow as a litigant.

**B.**

Next, Petitioner contends that Magistrate Judge Morris's "one-sided rulings, prejudicial assumptions, and unequal application of sanctions" have denied her fair process. ECF No. 143 at PageID.4406. Notably, Plaintiff's arguments are directed to Judge Morris's decisions, not mine. Importantly, the actions Plaintiff contends warrant recusal all arose during discovery matters that were referred to Judge Morris. Plaintiff argues that her "concern is not based on isolated rulings, but based on cumulative acts across cases" including (1) recommending civil contempt against her

- 10 -

counsel "without clear and convincing evidence, or even a hearing," (2) ignoring documented perjury by Dow managers, (3) permitting Defense Counsel to pursue privileged materials like Plaintiff's engagement agreements, while rejecting her motion to compel discovery, and (4) "[m]aking factual findings against plaintiffs based on no evidence or out-of-context assumptions, as shown in the sealed sanctions recommendation and 'light document' order in [the Jones] case." ECF No. 143 at PageID.4407–08.

Plaintiff also argues that the "wholesale acceptance" of Judge Morris's report and recommendations (R&R) raises questions of my impartiality when Judge Morris's "has been questioned on multiple occasions" by the Plaintiff. *Id.* at PageID.4409. Moreover, Plaintiff argues that despite concerns about Judge Morris's alleged impartiality "being raised for months . . . the District Court continues to issue orders—all of them, in favor of Dow—without even acknowledging that a due process violation has been alleged." *Id.*

But Plaintiff's arguments about Judge Morris' alleged impropriety, and mine by extension for accepting her R&Rs "wholesale," are, again in my opinion, without merit. For starters, Plaintiff cites no case law stating that accepting R&Rs is, on its face, an unethical violation if the opinions were reached on the merits. Indeed, the principle is inapposite: courts have routinely held that judicial decisions are not, in themselves, a basis for recusal. *See, e.g., Easley v. Univ. of Michigan Bd. of Regents*, 853 F.2d 1351, 1356 (6th Cir. 1988). That is because allegations of bias "must be a personal bias as distinguished from a judicial one, arising out of the judge's background and association and not from the judge's view of the law." *United States v. White*, 582 F. Supp. 3d 525, 535 (E.D. Mich. 2022) (quoting *Easley*, 853 F.2d at 1356). Thus, the Sixth Circuit has stated that the critical test "is whether the alleged bias 'stems from an extrajudicial source and results in an opinion on the merits on some basis other than what the judge learned from his participation in the

- 11 -

case.'" *United States v. Nelson*, 922 F.2d 311, 320 (6th Cir. 1990) (quoting *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251–52 (6th Cir. 1989) (internal citations omitted)). So because Plaintiff's contentions pertain to judicial rulings and not the exercise of personal bias, they do not require recusal from this matter.

And, importantly, Judge Morris and I have not discussed her R&Rs, which we refrain from doing as a matter of course, out of respect for her autonomy and independence, as well as mine.

Similarly, Plaintiff argues that she cannot "locate a single case where either the Magistrate Judge or the District Court had ever sanctioned [Defendant] Dow for anything," granted a motion to compel against a Dow entity, or sanctioned Dow; and that I have at least granted summary judgment, in part, for Dow in each case involving Dow assigned to me. ECF No. 143 at PageID.4413–14. Even if this were true, and it is not, it would not be a reason for recusal because they represent my judicial rulings and not the exercise of personal bias. Thus, this argument goes no further.

## C.

On October 8, 2025, Plaintiff filed a supplemental brief in support of her Petitioner for Writ of Mandamus. *See In re Sushma Jones*, Case No. 25-1486 (6th Cir. May 29, 2025). In it, she makes several additional arguments beginning with my position as Secretary of the Rollin M. Gerstacker Foundation ("Gerstacker Foundation")—a non-profit entity under both state and federal law that owns Dow common stock. She contends that my association with the foundation implicates an improper fiduciary duty to an entity with a "financial interest in the subject matter in controversy or in a party to the proceeding" under 28 U.S.C. § 455(b)(4), thus requiring my recusal.

First, let me provide a brief overview of both the Gerstacker Foundation and my role as a board member. Indeed, I am the Secretary of the Gerstacker Foundation. *Trustees and Officer*, GERSTACKERFOUNDATION, (last accessed December 22, 2025) https://www.gerstackerfoundation.

org/trustees-and-officers/. My association with the Gerstacker Foundation is included in my Annual Judiciary Financial Disclosure Report, which separately requires an extensive annual report of all my family's investments.

The Gerstacker Foundation is a qualified Internal Revenue Service (IRS) § 501(c)(3) non-profit foundation that makes approximately 130 to 150 financial grants to *charitable* recipients each year. It manages an endowment of more than $202,000,000 and—as of June of this year—owned Dow stock totaling 0.02 percent of the foundation's total assets. *See June 2025 Internal Records of the Foundation Prepared for the Board*. Annually, it funds grants totaling approximately $10,000,000 to a wide range of charitable recipients. In addition, qualifying foundations, like the Gerstacker Foundation, are carefully regulated by the IRS. Strict rules govern my conduct and prohibit any officer or trustee, including myself, from engaging in self-dealing. Our trustees are not compensated. The foundation retains three primary professional investment advisors from firms that independently manage portions of the Gerstacker Foundation's investments within the broad confines of diversification targets set by the board.

Notably, neither my wife nor my children owns Dow stock, as has been reflected in my Annual Disclosure Report. I sold some inherited Dow stock more than 20 years ago, when I served as a state circuit court judge, to satisfy Canon 4(D), which requires judges to divest investments in companies that are likely to require regular disqualification. I also sold inherited Corning stock in 2010 for the same reason.

Plaintiff has also included several additional concerns in her affidavit. ECF No. 177 at PageID.5004. Plaintiffs' allegations in paragraphs nineteen and twenty read as follows:

> 19. At the settlement conference, the judge took Edward in the back to talk to him while Rejanae sat next to me, which I thought was odd.
>
> 20. The judge introduced himself and then it ended and there was no effort to try to settle it.

- 13 -

*Id.* at PageID.5005.

Importantly, I did not separately discuss the case with Defense Counsel Edward Bardelli. Indeed, I do not agree to requests from counsel to discuss a settlement unless the attorneys for all parties are present. In this case, Plaintiff is correct that little effort was made to settle the case, but that was because Ms. Rejanae was present, as she said, at Ms. Aiken's direction but without settlement authority.[5] Indeed, at that juncture, I had never met Ms. Aikens. At the time this opinion is being written, I have met her only once: when she traveled to our Court to argue her motion seeking intervention with Judge Morris.

Plaintiff is also concerned about the organization of the Northern Division, explaining as follows at allegation 29 in the affidavit:

> 29. I saw online that the magistrate judge is the only judge in the same courthouse with judge Ludington, for over ten years. How would anyone think that he would actually disagree with her or be able to say she was wrong or biased? All of the Dow cases before mine seem like they go just to the two of them. They should not be allowed to do that.

ECF No. 177 at PageID.5005. Well, Judge Morris and I do disagree from time to time. The rest of Plaintiff's concerns are out of my control.

Finally, Plaintiff expresses her concern that Judge Morris and I attended the same high school, *see id.*, which is likely because there are only two high schools in the city of Midland. I graduated from high school more than 53 years ago. Judge Morris would have graduated years after that. Simply put, we are not invited to the same reunion events for the same graduating year.

Still, and I believe finally, Plaintiff cites *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988), for the proposition that my position on the Gerstacker Foundation board requires

---

[5] Notably, at settlement conferences we require someone with settlement authority to be present for each party.

my disqualification. I do not read *Liljeberg*—or any other legal authority for that matter—to stand for this proposition.

In *Liljeberg*, the petitioner, Liljeberg, was a pharmacist and part-owner of a real estate brokerage firm who hoped to construct and operate a hospital in a Louisiana suburb. *Liljeberg*, 486 U.S. at 852. To successfully operate this hospital, Liljeberg needed to obtain a "certificate of need" from the State of Louisiana. *Id.* Liljeberg negotiated with two major parties to build his hospital. *Id.* at 853. One set of negotiations involved a proposal to purchase a large tract of land from Loyola University for use as a hospital site, which would have benefited the University because the real estate sale would substantially increase the value of the University's property where the hospital would be built. *Id.* Negotiations were reported to the University's Board of Trustees and discussed at board meetings because the University's interest in the project was dependent on the issuance of the certificate of need. *Id.*

Liljeberg, however, was also conducting negotiations with the respondent's corporate predecessor, Hospital Affiliates International (HAI). *Id.* Later, Liljeberg and HAI would reach an agreement to develop the hospital, which provided for HAI to purchase a tract of land—not owned by the University—construct the hospital on that land, prepare and file for the certificate of need, and retain Liljeberg as a consultant to the hospital. *Id.* at 854.

But a dispute arose when the certificate of need was issued and delivered to Liljeberg. *Id.* It was unclear whether the agreement transferred ownership of the hospital to HAI. *Id.* Liljeberg argued that the transfer of ownership was conditional on whether there was a "final agreement" concerning his continued participation in the hospital project, a view HAI disputed. *Id.*

- 15 -

So litigation was launched in a United States District Court before Judge Robert Collins, who, after conducting a bench trial, entered a judgment crediting Liljeberg's version of the facts that were disputed and of critical importance to the ruling. *Id.* at 855.

But there was a problem: during the time when he decided the case, Judge Collins was a trustee of Loyola University, although he explained that he was not conscious of the fact that the University and Liljeberg were engaged in serious negotiations concerning the hospital project, or of the fact that the success of the negotiations with the University depended upon his conclusion that Liljeberg controlled the certificate of need, not HAI. *Id.* at 855–56. Thus, Judge Collins' impartiality in the dispute was brought into question under 28 U.S.C. § 455(a). *See id.* at 856.

The Supreme Court held that 28 U.S.C. § 455(a) did not require a judge to have actual knowledge of the University's interest to justify disqualification. *Id.* at 859–60. The Court determined that the statute required Judge Collins to disqualify himself. *Id.* at 861. In so concluding, the Supreme Court noted four facts, two of which were explained as follows:

> First, it is remarkable that the judge, who had regularly attended the meetings of the Board of Trustees since 1977, completely forgot about the University's interest in having a hospital constructed on its property in Kenner. The importance of the project to the University is indicated by the fact that the 80–acre parcel, which represented only about 40% of the entire tract owned by the University, was sold for $6,694,000 and that the rezoning *would substantially increase the value of the remaining 60%.* The "negotiations with the developers of the St. Jude Hospital" were the subject of discussion and formal action by the trustees at a meeting attended by Judge Collins only a few days before the lawsuit was filed.

> Second, it is an unfortunate coincidence that although the judge regularly attended the meetings of the Board of Trustees, he was not present at the January 28, 1982, meeting, a week after the 2–day trial and while the case was still under advisement. The minutes of that meeting record that representatives of the University monitored the progress of the trial, but did not see fit to call to the judge's attention the obvious conflict of interest that resulted from having a University trustee preside over that trial. These minutes were mailed to Judge Collins on March 12, 1982. If the judge had opened that envelope when he received it on March 14 or 15, he would have been under a duty to recuse himself *before* he entered judgment on March 16.

*Id.* at 865–66 (emphasis added).

- 16 -

Unlike in *Liljeberg*, where the value of the University's property would increase substantially because of Judge Collin's ruling, the market value of Dow, Inc., as of Friday, December 26, 2025, exceeds $16.4 billion dollars. *Dow Inc. (DOW) Valuation Measures*, YAHOO!FINANCE, (last visited Dec. 26, 2025) https://finance.yahoo.com/quote/DOW/?.

And the Supreme Court in *Liljeberg* noted that 28 U.S.C. § 455(b)(4) provides an independent reason that Judge Collins should have recused himself:

> Third, it is remarkable—and quite inexcusable—that Judge Collins failed to recuse himself on March 24, 1982. A full disclosure at that time would have completely removed any basis for questioning the judge's impartiality and would have made it possible for a different judge to decide whether the interests—and appearance—of justice would have been served by a retrial. Another 2–day evidentiary hearing would surely have been less burdensome and less embarrassing than the protracted proceedings that resulted from Judge Collins' nonrecusal and nondisclosure. *Moreover, as the Court of Appeals correctly noted, Judge Collins' failure to disqualify himself on March 24, 1982, also constituted a violation of § 455(b)(4), which disqualifies a judge if he "knows that he, individually or as a fiduciary, ... has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding."* This separate violation of § 455 further compels the conclusion that vacatur was an appropriate remedy; by his silence, Judge Collins deprived respondent of a basis for making a timely motion for a new trial and also deprived it of an issue on direct appeal.

*Id.* at 866–67.

The situation with the Gerstacker Foundation is decidedly different. Turn to the statutory language of § 455(b)(4). Judges are required to recuse themselves if they, individually or as a fiduciary, have a "financial interest" in the subject matter in controversy or in a party to the proceeding. *See* § 455(b)(4). But I do not have a "financial interest" described in § 455(b)(4). Indeed, § 455(b)(4) expressly exempts charitable organizations such as the Gerstacker Foundation because there is no financial interest in "[a]n office in an educational, religious, *charitable*, fraternal, or civic organization is not a 'financial interest' *in securities* held by the organization." § 455(b)(4)(ii). That is, I have no "financial interest" in the passive investment of the Gerstacker Foundation.

In sum, neither 28 U.S.C. § 455(a) nor (b)(4) requires my recusal from Plaintiff's case. Respectfully, I do not conclude that I should recuse from the case, so Plaintiff's Motion for Recusal will be denied.

If the Circuit has additional questions, I will, of course, promptly respond.

**IV.**

Accordingly, it is **ORDERED** that Plaintiff's Motion for Recusal, ECF No. 143, is **DENIED.**

**This is not a final order and does not close the case.**

Dated: January 5, 2026                    s/Thomas L. Ludington
                                          THOMAS L. LUDINGTON
                                          United States District Judge

- 18 -