# EXHIBIT H

Case 1:25-cv-12744-JEL-PTM ECF No. 25-9, PageID.581 Filed 02/13/26 Page 2 of 5

2021 WL 2381892
Only the Westlaw citation is currently available.
United States District Court, E.D. Michigan, Northern Division.

ARKONA, LLC and Dianne Kosbob, Plaintiffs,
v.
COUNTY OF CHEBOYGAN, et al., Defendants.

Case No. 1:19-cv-12372
|
Signed 06/10/2021

**Attorneys and Law Firms**

Matthew E. Gronda, Matthew E. Gronda, J.D., P.L.C., Saint Charles, MI, Philip L. Ellison, Outside Legal Counsel PLC, Hemlock, MI, for Plaintiffs.

Allan C. Vander Laan, Bradley C. Yanalunas, Cummings, McClorey, Davis & Acho, P.L.C., Grand Rapids, MI, for Defendant County of Cheboygan.

Allan C. Vander Laan, Cummings, McClorey, Grand Rapids, MI, for Defendant County of Monroe.

**ORDER GRANTING DEFENDANTS' MOTION TO STAY**

THOMAS L. LUDINGTON, United States District Judge

**\*1** This matter is before the Court pursuant to Defendants' Joint Motion to Stay Proceedings. ECF No. 40. Plaintiffs represent a class of former Michigan property owners seeking damages from two Michigan counties that foreclosed on various tax delinquent properties without compensating the owners for the after-tax equity. Defendants seek to stay this case pending the disposition of *Freed v. Thomas*, Nos. 21-1248/1288/1339 (6th Cir. 2021), a set of cross-appeals wherein the Sixth Circuit will presumably decide whether a Michigan county's retention of surplus proceeds from a tax foreclosure sale constitutes a taking without just compensation in violation of the Fifth Amendment. For the reasons set forth below, Defendants' Motion to Stay will be granted.

**I.**

**A.**

Plaintiffs Arkona, LLC and Dianne Kosbob owned separate parcels of real property in Cheboygan and Monroe County, respectively. In 2016, the respective Counties foreclosed on Plaintiffs' properties to satisfy tax delinquencies that had accumulated thereon. Both properties were sold at auction for an amount substantially greater than the tax delinquency, and both Counties retained the surplus proceeds generated, rather than refunding them to Plaintiffs.

In foreclosing, selling, and retaining the surplus proceeds from Plaintiffs' properties, the Counties were exercising their authority under a prior version of Michigan's General Property Tax Act (the "GPTA"), M.C.L. § 211.1 *et seq.* Before recent amendments, the GPTA allowed the statutorily defined "foreclosing governmental unit" to retain the surplus proceeds of a tax foreclosure sale without any procedure for compensating the owner. *See* M.C.L. § 211.78(m) (2015) (amended 2021).

On August 11, 2019, Plaintiffs brought this action against Cheboygan County, Monroe County, and County Treasurers Buffy Jo Weldon and Linda A. Cronan. ECF No. 1. The Amended Complaint, filed the following September, added Defendant Kay Sisung, the current Cheboygan County Treasurer. ECF No. 8. The Amended Complaint alleged five claims: taking without just compensation in violation of the Fifth and Fourteenth Amendments (Counts I and II); inverse condemnation (Count III); violation of article X, section 2 of the Michigan Constitution (Count IV); and excessive fine in violation of the Eighth Amendment and Fourteenth Amendments (Count V). *Id.* at PageID.65–75.

Defendants moved to dismiss the Amended Complaint in October 2019, arguing, *inter alia*, that the Tax Injunction Act and principles of federal-state comity precluded this Court from exercising jurisdiction over the case. ECF No. 11 at PageID.126–29. Before their motion could be decided, the case was stayed pending the disposition of *Freed v. Thomas*, No. 18-2312 (6th Cir.), a substantially similar case brought by a former Michigan property owner against Gratiot County and its treasurer. ECF No. 26. At the time the stay was entered, *Freed* was pending before the Sixth Circuit on the same jurisdictional issues raised by Defendants in this case.

**\*2** While this case was stayed, the Michigan Supreme Court decided *Rafaeli, LLC v. Oakland Cty.*, 952 N.W.2d 434 (Mich. 2020). *Rafaeli* was an inverse condemnation action brought by Michigan property owners against Michigan counties that had retained surplus proceeds from tax foreclosure sales. *Id.* at 440. The Michigan Supreme Court held that the retention of surplus proceeds under the GPTA constituted a taking without just compensation in violation of Michigan's Taking Clause. *Id.* at 460–63. The Court further held that just compensation for such a taking would be equal to the difference between the delinquent taxes, interest, penalties, and fees and the sale price of the property, rather than its fair market value. *Id.* at 465–66.

Shortly after *Rafaeli* was decided, Plaintiffs filed an emergency motion to lift the stay, certify the class, and appoint class counsel. ECF No. 27. Plaintiffs warned of a "potential flood of litigation" after *Rafaeli* that would undermine the efficiency of the proposed class. *Id.* at PageID.590. Accordingly, on July 30, 2020, the stay was lifted, the class was certified, and class counsel was appointed. ECF No. 28. The certified class is as follows:

> All property owners formerly owning property from within the counties of Monroe and Cheboygan who, since January 1, 2013, had said property seized by Defendants via the General Property Tax Act, MCL 211.78 et seq, which was worth more and/or was sold at tax auction for more than the total tax delinquency and was not refunded the excess/surplus equity but excluding any property owner who has filed their own post-forfeiture civil lawsuit to obtain such relief.

ECF No. 28 at PageID.716. On September 30, 2020, the Sixth Circuit decided the pending appeal in *Freed*, holding that neither the Tax Injunction Act nor principles of comity preclude a federal action against Michigan counties for surplus proceeds retained under the GPTA. *Freed v. Thomas*, 976 F.3d 729, 737 (6th Cir. 2020).

On January 15, 2021, Defendants' Motion to Dismiss was finally decided. Plaintiffs' Fifth Amendment takings claim (Count I) and inverse condemnation claim (Count III) were allowed to proceed. ECF No. 35. Their remaining claims were dismissed. Under the Case Management and Scheduling Order, entered on March 11, 2021, discovery is open until July 30, 2021, with dispositive motions due by August 30, 2021. ECF No. 38.

### B.

On February 26, 2021, Judge Bernard Friedman entered summary judgment for the plaintiff in *Freed* as to his Fifth Amendment takings claim. *Freed v. Thomas*, No. 17-CV-13519, 2021 WL 942077, at \*1 (E.D. Mich. Feb. 26, 2021). Consistent with *Rafaeli*,

*supra*, Judge Friedman held that the proper measure of just compensation was the difference between the delinquent taxes and the amount for which the property was sold at auction, not its fair market value. *Id.* at *3–4. The parties have since filed cross-appeals, which remain pending. *See Freed v. Thomas*, Nos. 21-1248/1288/1339 (6th Cir. 2021).

On May 7, 2021, Defendants filed the pending Motion to Stay, asking this Court to stay the case pending the disposition of the recent appeals in *Freed*. ECF No. 40. The Motion has since been fully briefed by the parties. *See* ECF Nos. 41, 43.

## II.

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants, and the entry of such an order ordinarily rests with the sound discretion of the District Court." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 626–27 (6th Cir. 2014) (quoting *Ohio Env't Council v. U.S. Dist. Ct., S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977)). "A party seeking to stay proceedings in one case for the resolution of another must 'make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else.' " *Roe v. Snyder*, 240 F. Supp. 3d 697, 703 (E.D. Mich. 2017) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936))."Where the stay motion is premised on the alleged significance of another case's imminent disposition, courts have considered the potential dispositive effect of the other case, judicial economy achieved by awaiting adjudication of the other case, the public welfare, and the relative hardships to the parties created by withholding judgment." *Caspar v. Snyder*, 77 F. Supp. 3d 616, 644 (E.D. Mich. 2015).

## III.

**\*3** Defendants' Motion to Stay will be granted given the dispositive effect of the appeals in *Freed*, the inequity and inefficiency in proceeding with the case, and the relatively limited prejudice to Plaintiffs and the class. *See Caspar*, 77 F. Supp. 3d 344 (listing equitable factors).

First, the Sixth Circuit's decision in *Freed* will presumably resolve the limited Fifth Amendment and state law questions that remain in this case, including the manner in which just compensation should be calculated if Defendants are found liable. [1] Plaintiffs argue that just compensation should be calculated based on the fair market value of the foreclosed property, while Defendants, relying on *Rafaeli*, *supra*, maintain that just compensation, if any is owing, would be limited to the surplus proceeds generated by the foreclosure sale. *See* ECF No. 43 at PageID.921. The choice of theory is likely to have a substantial impact on the amount of damages recoverable. In resolving the pending appeals in *Freed*, the Sixth Circuit will presumably decide which theory is appropriate for purposes of the Fifth Amendment. Accordingly, the dispositive effect of the pending appeals in *Freed* weighs strongly in favor of a stay.

Entering a stay would also promote judicial economy and reduce the costs of litigation on all parties. Indeed, because the Sixth Circuit's decision in *Freed* is likely to be dispositive, entering a stay would help counsel and this Court avoid duplicative efforts developing the case.

Another stay would, of course, inevitably prejudice the interest of Plaintiffs and the broader public in expeditious proceedings. *See Ohio Env't Council*, 565 F.2d at 396 ("[A] court must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liabilities without undue delay."). But given the circumstances, such prejudice is both well-warranted and relatively limited. As explained above, staying proceedings while the Sixth Circuit resolves the pending appeals in *Freed* will conserve the resources of the litigants and ensure that the eventual determination of their rights is consistent with the law of the circuit.

**\*4**  Furthermore, while Plaintiffs lament the delay that they have already suffered, further delay is, to some extent, unavoidable. Even if Defendants' Motion were denied and the case were decided at summary judgment, the final determination as to liability and just compensation would likely be appealed by one or all parties. As a result, the final determination of the rights of Plaintiffs and the class would be postponed until the Sixth Circuit rendered its judgment.

Based on the foregoing, the delay that might be avoided by denying Defendants' Motion is far outweighed by the inequity and inefficiency in continuing to litigate issues that are likely to be decided by the Sixth Circuit in *Freed*.

## IV.

Accordingly, it is **ORDERED** that Defendants' Motion to Stay Proceedings, ECF No. 40, is **GRANTED**. This case is hereby **STAYED** pending the disposition of *Freed v. Thomas*, Nos. 21-1248/1288/1339 (6th Cir. 2021).

**All Citations**

Not Reported in Fed. Supp., 2021 WL 2381892

## Footnotes

1   Plaintiffs initially claim in their response brief that "*Freed* is not technically before the Sixth Circuit." ECF No. 41 at PageID.909. Plaintiffs point to the fact that the Sixth Circuit recently directed the parties to show cause why the appeal should not be dismissed based on an initial review of the case indicating that the Eight Amendment claim was still pending. *See Freed v. Thomas*, No. 21-01339 (6th Cir. Apr. 14, 2021). But the plaintiff in *Freed*—who is represented by the same counsel as Plaintiffs in this case—filed an unopposed emergency motion in the district court to correct the "simple oversight" in the judgment. *See* Plaintiff's Motion to Correct Final Judgment, Freed v. Thomas, No. 17-13519 (E.D. Mich. Apr. 19, 2021). He then filed a response to the show cause order informing the Sixth Circuit of the emergency motion and maintaining that "Judge Friedman was quite clear that he rejected the Eighth Amendment [claim]." *See* Appellant's Response to Show Cause Order at 2, Freed v. Thomas, No. 21-1339 (6th Cir. Apr. 23, 2021). Plaintiffs' reliance on what their counsel has elsewhere referred to as a "simple oversight" is unpersuasive.

**End of Document**                                              © 2026 Thomson Reuters. No claim to original U.S. Government Works.