# Exhibit B

Jones v. The Dow Chemical Company, Docket No. 1:23-cv-11814 (E.D. Mich. Jul 26, 2023), Court Docket

## Multiple Documents

| Part | Description |
| --- | --- |
| 1 | 151 |
| 2 | Exhibit A |
| 3 | Exhibit B |

**Bloomberg Law**®

© 2026 Bloomberg Industry Group, Inc. All Rights Reserved. Terms of Service

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

NORTHERN DIVISION

SUSHMA JONES,                                          Case No.: 1:23-cv-11814

        Plaintiff,

v.

THE DOW CHEMICAL COMPANY,

        Defendant.

Hon. Thomas L. Ludington

Mag. Judge Patricia T. Morris

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR RECUSAL**

Plaintiff Sushma Jones, by and through undersigned counsel, respectfully submits this Reply in support of her Motion for Recusal (ECF No. 143) and states as follows:

Defendant's response (ECF No. 147) fails to rebut the fundamental issue underlying Plaintiff's motion: that a reasonable observer, aware of the facts, would question whether Plaintiff has been and will be afforded a fair and impartial adjudication in this Court. This case involves not only systemic disparities in due process, but also a documented familial connection between the presiding judge and Dow's former leadership—at a level expressly recognized by Congress in 28 U.S.C. § 455(b)(5)(i). Defendant's assertion that Plaintiff's concerns are merely "disagreement" with rulings trivializes extensive and documented issues of judicial conduct and appearance of bias, including one-sided sanctions, unaddressed perjury, and the near-unbroken

1

history of favorable rulings for Dow in this Court – all while ignoring the law that applies to its actions.

## ARGUMENT

I. DEFENDANT CONCEDES THE FAMILIAL RELATIONSHIP BETWEEN JUDGE LUDINGTON AND DOW'S FORMER CEO

Defendant does not dispute that Judge Ludington is the son of John C. Ludington, the former Chairman and CEO of Dow Corning, a Dow-affiliated company. Instead, it minimizes this relationship by claiming Dow Corning was a "separate entity" and the connection too attenuated. This is false. Dow Corning was a joint venture of The Dow Chemical Company, and now Dow Corning is its wholly-owned subsidiary. **Exhibit A – History of Dow Timeline** (also found at https://corporate.dow.com/en-us/about-dow/company/history/timeline.html#tabs-708e4faf43-item-9ab3605862-tab) (last visited May 27, 2025).

**2015**

Dow and Corning announce a definitive agreement to restructure ownership of Dow Corning in which Dow will become the full owner of the 50:50 joint venture.

Dow and DuPont announce that their boards of directors unanimously approved a definitive agreement under which the companies will merge, then subsequently spin off into three independent companies.

**2016**

Dow completes a strategic ownership restructure of Dow Corning and becomes 100% owner Dow Corning's silicones business.

Moreover, Dow recognizes Mr. Ludington's impact on the current Dow company in its own literature:

2

**New Building Names**

- **DC2 DOW LUDINGTON CENTER: John S. "Jack" Ludington** As CEO, Ludington was particularly proud of Dow Corning's development of a Code of Business Conduct during the company's international expansion in the 1970s. It established moral and ethical standards for the conduct of the company's business in different countries with different cultural practices. Dow Corning's Code of Business Conduct became a model for companies conducting international business. Ludington believed Dow Corning's greatest strength was its people and had a keen ability to recognize and utilize the strengths of the company's employees at all levels. The business grew significantly during John's tenure as the Chief Executive Officer, with sales more than tripling largely because of its global expansion.

**Exhibit B – Dow Corning Facility Update**. The document is a document of Defendant Dow, not Dow Corning:

®™Trademark of The Dow Chemical Company ("Dow") or an affiliated company of Dow

© 2018 The Dow Chemical Company. All rights reserved.

(*Id.* at 7). 28 U.S.C. § 455(b)(5)(i) mandates recusal when a third-degree relative is an officer or director of a party. Dow's own website confirmed that Dow acquired full ownership of Dow Corning in 2016, calling it a wholly owned subsidiary of The Dow Chemical Company. Even absent a current officer relationship, the appearance of bias arising from such a direct familial connection—particularly where the judge resides and presides in a jurisdiction colloquially referred to as "Dow country"—triggers § 455(a). *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988) (appearance of impropriety requires recusal regardless of actual bias).

II.    DEFENDANT FAILS TO ADDRESS UNEQUAL TREATMENT, INCLUDING IGNORING PERJURY AND IMPOSING ONE-SIDED SANCTIONS

Defendant's assertion that Plaintiff simply "disagrees" with prior rulings ignores the record:

- The Court has sanctioned Plaintiff's counsel without hearing or clear and convincing evidence, violating Sixth Circuit standards. *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 590 (6th Cir. 1987)).

3

- The same Court refused to sanction Dow or compel compliance when it disobeyed a court order to produce comparator data—then accepted Dow's incomplete chart as "compliance" without explanation.

- Plaintiff has produced testimony and documents proving that Dow witnesses, including Jessica Bruske and Jason Ellis, falsely denied knowledge of complaints, and the District Court made comments regarding her intentions, which could not be known from reading a transcript, and also that Bruske had a memory lapse even when she very clearly said "no" rather than "I don't recall." No consequence has ever followed.

Defendant's defense of Bruske's purported "memory lapse" as "not enough for Plaintiff's counsel" evades the issue: perjury is not excused by professed ignorance when contradicted by written documentation.[1] That the Magistrate Judge and then the District Court ruled no perjury occurred without actually inquiring into the matter proves Plaintiff's point about the chilling and exclusionary impact of judicial conduct.

III.    DEFENDANT IGNORES THE DUE PROCESS IMPLICATIONS OF CUMULATIVE BIAS

Recusal is not a punishment or a finding of actual bias—it is a safeguard to ensure that Plaintiff's due process rights are respected. The cumulative record of this Court's rulings includes:

- Granting summary judgment for Dow in every discrimination claim before it, and only denying summary judgment twice on retaliation claims;

- Never sanctioning Dow, despite repeated discovery violations, even one that the Court found it committed in obstructing a Rule 30(b)(6) deposition;

- Ordering Plaintiff to pay sanctions for producing documents that were duplicative of what Dow already had, without requiring Dow to even attach the documents in question for the Court to assess the issue;

---

[1] Bruske has been confronted with the same information in other depositions and still continues to falsely state that she has had no complaints of racial discrimination.

- Canceling the summary judgment hearing after Plaintiff filed a declaration of bias, and issuing dispositive rulings without oral argument.

Due process requires not just fairness but the appearance of fairness. *Offutt v. United States*, 348 U.S. 11, 14 (1954). In *Liteky v. United States*, 510 U.S. 540, 555 (1994), the U.S. Supreme Court held that even without extrajudicial bias, recusal is required where judicial conduct creates "a deep-seated favoritism or antagonism that would make fair judgment impossible." That threshold has been met here.

### IV. DEFENDANT'S ATTACK ON PLAINTIFF'S COUNSEL HIGHLIGHTS THE NEED FOR RECUSAL

Rather than rebutting Plaintiff's evidence, Defendant spends much of its response impugning Plaintiff's counsel—accusing counseling of improperly referencing sealed material, mischaracterizing rulings, and failing to attend hearings. These personal attacks reinforce, rather than rebut, the need for recusal. No judge should rely on ad hominem arguments made by a party to avoid scrutiny of its own impartiality.

### V. THE RECORD ACROSS RELATED CASES SUPPORTS PLAINTIFF'S CLAIMS

Defendant downplays the significance of rulings in other Dow cases before this Court. But the law recognizes that a pattern of outcomes can support an inference of bias. *United States v. Jordan*, 49 F.3d 152, 157 (5th Cir. 1995). In 100% of publicly available Dow discrimination cases, this Court has granted summary judgment in full or part in Dow's favor. In contrast, the Court has never sanctioned Dow for discovery misconduct—while repeatedly sanctioning Plaintiff's counsel, even when Defendant ignored court orders or presented perjured testimony.

### CONCLUSION

Whether viewed under 28 U.S.C. § 455(a) or § 455(b)(5), the appearance of bias is undeniable. Defendant's opposition confirms that the Court's impartiality is reasonably in

5

question.  It is understandable why Dow would want to maintain the status quo, because it only helps them to continue to not follow the rules of discovery. To preserve public confidence in the judiciary and ensure fairness to this Plaintiff and others, recusal is both appropriate and necessary.

WHEREFORE, Plaintiff respectfully requests that this Court grant her Motion for Recusal and reassign this matter to a different District Judge.

Respectfully Submitted,

Dated: May 27, 2025
CARLA D. AIKENS, P.L.C.

/s/ Carla D. Aikens
Carla D. Aikens (P69530)
615 Griswold St., Ste. 709
Detroit, MI 48226
Tel:    (844) 835-2993
Fax:    (877) 454-1680

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein on May 27, 2025 by:

/s/ Mykelin Izeluk

6

# EXHIBIT A

CORPORATE

 

Corporate Home ❯ About Dow ❯ Company ❯ History ❯ Timeline

# Timeline

*"If you can't do it better, why do it?"*
**– Herbert H. Dow**

Dow's legacy reflects a commitment to look forward and do things better. We continue to focus on solving the toughest challenges of today and tomorrow—driven by our ambition to become the world's most innovative, customer-centric, inclusive and sustainable materials science company. Our history reminds us that we have the ability to change the world through collaborative partnerships, science and technology. Learn more about the history of Dow.

**1897–1920**   **1920–1940**   **1941–1959**   **1960–1989**

**1977–2004**   **2004–Present**



# Innovation at the Intersections

## Innovating Solutions for Our Customers and the World

Facing mounting global competition and industry consolidation, Dow recognizes it faces a critical juncture. It can choose to transform once again to the innovation company of its origins – or stay a basics commodity company. In 2004, Dow begins to restructure its portfolio by going deeper into targeted high-value markets and to rebuild the company's R&D infrastructure, which had been sacrificed in the mid-1990s to generate cash flow.

Over the past 10 years, Dow has strengthened its innovation and integration, making long-term investments in R&D and low-cost feedstocks. Dow's ability to innovate at the intersection of chemistry, engineering and material science has brought solutions that differentiate its customers while positively impacting the world. These include lightweight carbon fibers for cars, technology to more efficiently produce cleaner water, and packaging solutions that help make food safer and stay fresh longer.

## 2004

Andrew Liveris begins his 14-year tenure as Chairman and CEO, transforming Dow from a commodity chemicals manufacturer into one powered by science, driven by innovation, and delivering solutions to the world.

## 2006

Dow announces its 2015 Sustainability Goals.

# 2008

Kuwait cancels its $17 billion deal for joint venture K-Dow Petrochemicals.

# 2009

Dow acquires Rohm and Haas, a key element in Dow's new Advanced Materials division.

# 2010

Dow becomes a Worldwide Olympic Partner and the Official Chemistry Company for the Olympic Movement through 2020.

Dow completes divestiture of its Polycarbonate, Latex, Rubber and Styrenics businesses into an independent company named Trinseo (formerly Styron).

# 2011

Dow unveils comprehensive plans to increase its ethylene and propylene production and connect its U.S. Gulf Coast operations to shale gas liquids.

Dow and Saudi Aramco announce a joint venture to create Sadara Chemical Co.

# 2013

Dow announces plans to exit a significant portion of its chlorine chain businesses, setting the stage for a successful merger with Olin in 2015.

# 2015

Dow and Corning announce a definitive agreement to restructure ownership of Dow Corning in which Dow will become the full owner of the 50:50 joint venture.

Dow and DuPont announce that their boards of directors unanimously approved a definitive agreement under which the companies will merge, then subsequently spin off into three independent companies.

# 2016

Dow completes a strategic ownership restructure of Dow Corning and becomes 100% owner Dow Corning's silicones business.

# 2017

DowDuPont merger successfully completed. Company moves forward toward intended separation into industry-leading, publicly traded companies in Agriculture, Materials Science and Specialty Products; separations expected to occur within 18 months.

# 2018

Andrew N. Liveris transitions out of DowDuPont Executive Chairman Role and retires; Jim Fitterling named CEO-elect and Howard Ungerleider named President-elect and CFO of intended Materials Science Company.

# 2019

Dow completes separation from DowDuPont, marking the beginning of an exciting new chapter for the company. Dow executives ring the bell at the New York Stock Exchange to open the market and signal the beginning of regular way trading under the "DOW" ticker symbol.

# You may be interested in...

## Seek Together Blog →

## Purpose in Action →        Careers →

**About Dow**

**Purpose in Action**

**News**

**Collaborations**

**Careers**

**Employee Benefits and Well Being**

Privacy Statement

Terms of Use

Accessibility Statement

California Supply Chains Act

Copyright © Dow (1995-2025). All Rights Reserved. ®™ Trademark of Dow or an affiliated company of Dow

## Connect with Dow:

# EXHIBIT B



# Facility Update

Dow Corning Building Naming

Dow.com

DOW RESTRICTED

# Heritage Dow Corning Site

- Currently referred to as DC1, DC2, DC3, DC4 (lab)

- New names:

1. **Dow Central Campus – For the overall campus. The location is centrally located within the Great Lakes Bay Region and retains the DCC nomenclature.**

2. **Name the buildings for the important Dow Corning historical figures, as we have for Dow buildings.**

    - Ensure the heritage of DC is retained/incorporated into Dow.

    - Retain names of honorees from Dow Corning who are already established in the facility (i.e Dow Hyde Center and Dow Houghton Building)

    - Determine name of Innovation Center closer to opening date. (List of Key Dow/HDC Scientists Innovators to be developed)

    - Retain conference room numbering conventions to provide continuity/clarity.

3. **Roads:** There are two primary roads through the site. Follow existing Dow practice, name after two major production facilities: **Barry Way (re: Salzburg Rd.) and Carrollton Drive (re: Carter Rd)**



DOW RESTRICTED  DOW RESTRICTED

2

# Dow Central Campus



DOW RESTRICTED

# New Building Names

- **DC2 DOW LUDINGTON CENTER: John S. "Jack" Ludington** As CEO, Ludington was particularly proud of Dow Corning's development of a Code of Business Conduct during the company's international expansion in the 1970s. It established moral and ethical standards for the conduct of the company's business in different countries with different cultural practices. Dow Corning's Code of Business Conduct became a model for companies conducting international business. Ludington believed Dow Corning's greatest strength was its people and had a keen ability to recognize and utilize the strengths of the company's employees at all levels. The business grew significantly during John's tenure as the Chief Executive Officer, with sales more than tripling largely because of its global expansion.

- **DC3 DOW MCKENNON CENTER: Keith R. McKennon** was admired throughout Dow for his wise and trusted leadership of the Company. McKennon joined Dow as a chemist in 1955. During his brilliant Dow career, he held a wide range of assignments, including general manager of Dow Agricultural Products, vice president for government and public affairs, director of research and development, and president of Dow USA. After a 30-year career at Dow, he moved to Dow Corning, where he became chairman and CEO.

- **DC40 ANNA COLEMAN RESEARCH BUILDING: Dr Anna Coleman** was a Ph.D. chemist from the Univ. of Pittsburg with a passion for science and knowledge management.  Anna led the company by making research information accessible through the first digitization of research data into a computer system in 1969.  Due to Anna's vision, Dow Corning had the most comprehensive and 'usable' information retrieval system for silicone chemistry in the world that helped enable global expansion.

DOW RESTRICTED          DOW RESTRICTED

4

# Existing Buildings

- **DC1 DOW HOUGHTON CENTER:** **Amory Houghton** was instrumental in the establishment and growth of Dow Corning. He was chairman emeritus of the Corning Glass Works and former United States Ambassador to France. Mr. Houghton served as Ambassador to France from 1957 to 1961 during the administration of President Dwight D. Eisenhower. The French Government He was subsequently awarded him the insignia of the Grand Croix of the Legion of Honor. Houghton devoted his entire business career to the glass works and was the fourth generation of his family associated with the company.

- **DC4 DOW HYDE CENTER:** **James Franklin Hyde** was an American chemist and inventor. He has been called the "Father of Silicones" and is credited with the launch of the silicone industry in the 1930s. His most notable contributions include his creation of silicone from silicon compounds and his method of making fused silica, a high-quality glass later used in aeronautics, advanced telecommunications, and computer chips. His work led to the formation of Dow Corning, an alliance between the Dow Chemical Company and Corning Glass Works that was specifically created to produce silicone products.





# Thank
# You

The information contained in this communication does not constitute an offer, does not give rise to binding obligations, and is subject to change without notice to you. The creation of binding obligations will occur only if an agreement is signed by authorized representatives of Dow and your company. Any reference to competitor materials contained in this communication is not an endorsement of those materials by Dow or an endorsement by the competitor of Dow materials.

To the fullest extent permitted by applicable law, Dow disclaims any and all liability with respect to your use or reliance upon the information. **DOW DOES NOT MAKE ANY WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, WITH RESPECT TO THE UTILITY OR COMPLETENESS OF THE INFORMATION AND DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. DOW DISCLAIMS LIABILITY FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES.**

®™Trademark of The Dow Chemical Company ("Dow") or an affiliated company of Dow

© 2018 The Dow Chemical Company. All rights reserved.

DOW RESTRICTED